# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BILLY J. LEMOND, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 2:17-cv-00113-WTL-DLP |
| PAUL TALBOT, ALEYCIA MCCULLOUGH, | ) | |
| Defendants. | ) | |

**Entry Discussing Defendants' Amended Motion for Summary Judgment**

Plaintiff Billy J. Lemond filed this civil action pursuant to 42 U.S.C. § 1983 against Dr. Paul Talbot and Health Service Administrator Aleycia McCullough alleging they are liable to him for providing inadequate medical treatment. Specifically, Mr. Lemond alleges that while he was incarcerated at Pendleton Correctional Facility, he was denied necessary medical treatment following his August 24, 2015, lower back surgery at Ball Memorial Hospital in Muncie, Indiana. He asserts that Defendants failed to provide him with the pain medication prescribed by Neurosurgeon Dr. Gautam Phookan and failed to order needed physical therapy for eight months. As a result, Mr. Lemond allegedly suffered unnecessary pain and loss of mobility.

Defendants seek resolution of the remaining claims through summary judgment. For the reasons explained below, Ms. McCullough is entitled to judgment in her favor on all claims while the claims against Dr. Talbot cannot be resolved through summary judgment. Accordingly, the motion for summary judgment, Dkt. No. 27, is **granted in part and denied in part.**

# I.
## Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

# II.
## Eighth Amendment

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). Mr. Lemond's claims are based on the theory that Defendants were deliberately indifferent to his serious medical needs. At all times relevant to Mr. Lemond's claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated

under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner." *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005). The Seventh Circuit recently tackled this issue in *Petties*, writing:

> To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) (*citing Farmer*, 511 U.S. at 842, 114 S.Ct. 1970). For a prison official's acts or omissions to constitute deliberate indifference, a plaintiff does not need to show that the official intended harm or believed that harm would occur. *Id.* at 992. But showing mere negligence is not enough. *Estelle*, 429 U.S. at 106, 97 S.Ct. 285 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) ("Deliberate indifference is not medical malpractice."). Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim. *Farmer*, 511 U.S. at 836–38, 114 S.Ct. 1970. Instead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm. *Id.* at 837, 114 S.Ct. 1970. Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety. *Id.* at 844, 114 S.Ct. 1970.

*Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). There is no doubt that this is a high standard for any plaintiff to meet. However, to survive summary judgment the plaintiff need not prove his

case. Instead, the plaintiff is only required to present "evidence from which a reasonable jury could infer a doctor knew he was providing deficient treatment." *Id.* at 726.

In this case, Defendants do not dispute that Mr. Lemond's lumbar issues constitute an objectively serious medical need. The issue is whether either Defendant knew of Mr. Lemond's condition and the substantial risk of harm it posed, but disregarded that risk by denying adequate pain medications and delaying physical therapy.

## III.
## Dr. Talbot

The Court must accept the facts in the light most favorable to the non-moving party and all reasonable inferences must be drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). The facts material to the claims against Dr. Talbot are discussed below.

### A. Undisputed Background Facts

Dr. Talbot is a physician licensed to practice medicine in Indiana as a General Practitioner. He was employed as the Medical Director at Pendleton Correctional Facility ("Pendleton") between 2014 and March 30, 2017.

On August 24, 2015, Dr. Gautam Phookan performed an L3 to L5 decompressive laminectomy (surgery on the lumbar spine to relieve pressure on the spinal cord or nerves) on Mr. Lemond. The surgery was uncomplicated. After the operation, Mr. Lemond reported his leg pain had resolved. His back pain was also well controlled with intravenous and oral narcotics. Mr. Lemond received physical therapy for ambulation and performed well.

Dr. Phookan prescribed Norco (hydrocodone-acetaminophen, a narcotic pain medication) as needed for mild to moderate pain and noted Mr. Lemond could resume his Lipitor (a medication that treats high cholesterol) and Gabapentin (or Neurontin, its brand name, a medication that treats

4

nerve pain). See Dkt. No. 29-2 at 59. Dr. Phookan noted an equivalent medication substitution for Norco could be used. See Dkt. No. 29-1 at 57 (labeled MR – 0056). Dr. Phookan prescribed 120 tablets of Norco, the equivalent of a 30-day supply.

Mr. Lemond was discharged on August 26, 2015, and ambulated without assistance. That same day, Dr. Talbot saw Mr. Lemond at Pendleton. Mr. Lemond appeared alert. Dr. Talbot prescribed Tramadol for pain for five days and a follow-up with a neurosurgeon. Dr. Talbot placed Mr. Lemond in the infirmary for twenty-four hours to monitor his condition.

On October 6, 2015, Dr. Phookan examined Mr. Lemond at an outside medical appointment. Dr. Phookan attempted to provide back exercises to Mr. Lemond. Dr. Phookan also allegedly told Mr. Lemond he would need physical therapy to help with the recovery, but there is no indication that he recommend physical therapy in his treatment notes. Although the exercise information was provided by Dr. Phookan, Mr. Lemond never received it. Instead, the materials describing the exercises were taken by custody staff when Mr. Lemond was transported back to the prison, the materials were then placed in Mr. Lemond's medical file but not delivered to him.

On November 11, 2015, Dr. Talbot met with Mr. Lemond and determined that he would request physical therapy. The medical record reflects that physical therapy was a part of Mr. Lemond's treatment plan. Dkt. No. 29-2. On this date, Dr. Talbot created a request for physical therapy in the electronic medical record. Dkt. No. 35-1 at 11. However, after the appointment, Dr. Talbot reviewed Dr. Phookan's October 6, 2015, encounter with Mr. Lemond and noted that Dr. Phookan had provided pamphlets on back stretching and strengthening exercises. Dr. Talbot wrongly assumed that these exercises had been provided to Mr. Lemond. Dr. Talbot determined

5

that these stretching and strengthening exercises were appropriate for Mr. Lemond and that physical therapy was not required.

On December 11, 2015, Dr. Talbot saw Mr. Lemond at a follow up appointment. The treatment plan indicated that Mr. Lemond was approved for physical therapy. Dkt. No. 29-1 at p. 27. Dr. Talbot believes that this notation was an oversight on his part because Dr. Talbot had not submitted any request for physical therapy.

On March 11, 2016, Dr. Talbot saw Mr. Lemond for his request for physical therapy. Dr. Talbot noted that Mr. Lemond was fairly active and worked in the protective custody building. In Dr. Talbot's opinion, physical therapy was clinically indicated at this time because Mr. Lemond was overworking himself by carrying buckets and mopping floors, and physical therapy would assist with strength training and flexibility.[1]

Mr. Lemond then received physical therapy as ordered on March 31, 2016, April 7, 2016, April 15, 2016, April 21, 2016, April 26, 2016, and May 12, 2016. Mr. Lemond experiences limited mobility.

Mr. Lemond has recently been treated for complaints of back pain. Diagnostic testing reflects that these complaints arise from moderate stenosis at L5-S1 (the lower lumbar spine). Stenosis is a chronic degenerative narrowing of the spinal canal caused by normal wear and tear on the spine. Dr. Talbot's opinion is that Mr. Lemond's stenosis and his current complaints of back pain are unrelated to his post-laminectomy pain medication or the timing of his physical therapy.

---

[1] Mr. Lemond argues that this fact demonstrates that he was not healing properly if eight months after surgery, mopping and carrying a mop bucket with less than two gallons of water is overworking. "Had Plaintiff had PT and pain medication in the beginning so he could move around as needed without the pain, Plaintiff shouldn't have been overworking himself." Dkt. No. 35 at p. 4.

**B. Facts in Dispute**

There is a **material fact in dispute** regarding whether Dr. Talbot ever conducted a physical examination of Mr. Lemond. Mr. Lemond testified that he has "never had any Physical examination by Dr. Talbot. There has never been heel to toe walk, extremity & para spinous muscle exam, Faber test, straight leg raises or femoral stretches done … in a medical appointment with Dr. Talbot. I have never had any physical exams by any medical staff while at Pendleton." Dkt. No. 35-1 at p. 13.[2] In response, Defendants argue that Mr. Lemond's testimony should be rejected because it is inconsistent with the medical records. This argument is rejected because the medical records at issue are simply recordings of medical provider's observations. Observations recorded in a medical record are entitled to no more weight than observations recorded in an affidavit for the purposes of resolving a summary judgment motion. Defendant's argument would be more persuasive if the medical records at issue were independent lab results or a video recording of an examination taking place. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). They are not. A reasonable jury could conclude that Mr. Lemond's testimony is credible and that the medical records were fabricated or inconsistent with reality.

There is also a **material fact in dispute** regarding whether Dr. Talbot prescribed Tramadol for five days because he was concerned about long-term use of opioid and opioid-like medications. Dr. Talbot argues that long-term pain management with opioid/narcotic pain relievers is generally

---

[2] There is one exception: a nurse practitioner examined his eyes, ears, throat, listened to his chest and tested his knee reflexes with a little hammer. Dkt. No. 35-1 at p. 13.

not appropriate, particularly not in the prison setting where the potential for abuse,[3] misuse, and diversion of this medication is significant. Mr. Lemond argues that Dr. Phookan's 30-day supply of narcotic medication should have been provided because Dr. Phookan is a specialist who treats prisoners and was aware that Mr. Lemond was incarcerated when he prescribed the medication. In addition, following Mr. Lemond's follow up appointment with Dr. Phookan, Dr. Talbot allowed Dr. Phookan's recommended Tramadol prescription to be filled. Mr. Lemond argues that this suggests that Dr. Talbot's prior objection to allowing the narcotic drugs at the prison was pretext.

There is a **material fact in dispute** whether Mr. Lemond reported to Dr. Talbot on August 27, 2015, that he was not in pain.

There is a **material fact in dispute** whether the Depo-Medol injection treated Mr. Lemond's pain. On September 1, 2015, Mr. Lemond was in the urgent care center having his bandage changed. He told the nurse that he was in pain and that Dr. Talbot had taken away his pain medication. At Mr. Lemond's request, a nurse contacted Ms. McCullough to address his pain medication issue. Ms. McCullough then sent Dr. Talbot to see Mr. Lemond. Dr. Talbot then instructed the nurse to administer a Depo-Medrol injection. Mr. Lemond states that the medication was called Solu-medrol (not Depo-Medrol) and that it is an anti-inflammatory medication and not designed to treat pain.

There is a **material fact in dispute** whether over-the-counter pain medications available from the prisoner commissary such as Tylenol were a reasonable substitute for Tramadol or additional pain medications.

---

[3] Mr. Lemond testified that he had not been caught or accused of abuse, misuse or diversion of medication.

There is a **material fact in dispute** regarding whether Dr. Talbot believed Mr. Lemond had additional complaints of pain. Mr. Lemond argues that it is objectively unreasonable to stop pain medication only seven days after surgery when there were still sixteen staples in his back. Meanwhile, Dr. Talbot argues that if Mr. Lemond was in pain after he administered Depo-Medrol on September 1, 2015, he should have submitted a health care request reporting that pain. Dr. Talbot testified that he was not aware of Mr. Lemond's complaints of pain after September 1, 2015.[4] Mr. Lemond testified, however, that "I have never told any medical staff that the numbness in me [sic] leg was gone or resolved. The numbness hasn't changed since it started. Dr. Phookan stated I may never get the feeling back due to the amount of time before surgery. I have never told any medical staff that I was in pain but it is controlled. That doesn't even make any since [sic] to me. If the PAIN is controlled then you wouldn't know there was pain." Dkt. No. 35-1 at p. 13.

There is a **material fact in dispute** regarding whether Dr. Talbot believed Mr. Lemond needed physical therapy to recover from the surgery and, if so, why he failed to timely schedule that therapy.

There is a **material fact in dispute** whether Mr. Lemond was adversely affected by the delay in providing of physical therapy.

**C. Dr. Talbot is Not Entitled to Summary Judgment**

Mr. Lemond argues that Dr. Talbot is liable to him because he took away the pain medication prescribed by the specialist who performed the surgery and ignored Mr. Lemon's

---

[4] Mr. Lemond states that he spoke with several nurses about being in pain while visiting the Urgent Care Clinic and that they said they emailed Dr. Talbot requesting pain medication for Mr. Lemond. However, a review of Dr. Tablot's emails did not turn up any emails seeking pain medication for Mr. Lemond. Dkt. No. 43 at p. 4.

request for physical therapy to save Corizon money. Dkt. No. 35 at p 5. Mr. Lemond argues that it is not possible that Dr. Talbot did not know he was in pain because even a lay person knows that any human being that has their back cut open and the spine worked on and stapled back together is going to be in pain. Dkt. No. 35-1 at p. 15. In response, Dr. Talbot argues that he provided thoughtful and repeated evaluations of Mr. Lemond following his lumbar surgery and prescribed an appropriate course of treatment, which included adequate pain medications, including Tramadol, Depo-Medrol, Gabapentin, and Tylenol, and physical therapy when it was medically indicated.

In *Petties*, the Seventh Circuit concluded "that even if a doctor denies knowing that he was exposing a plaintiff to a substantial risk of serious harm, evidence from which a reasonable jury could infer a doctor knew he was providing deficient treatment is sufficient to survive summary judgment." *Petties,* 836 F.3d at 726. That is the case here. The facts taken in the light most favorable to Mr. Lemond are that Dr. Talbot refused to take instructions from a specialist when he reduced the narcotic pain relief prescription from 30 days to 5 days; chose an easier and less effective course of treatment in regards to physical therapy; and inexplicably delayed treatment for both narcotic pain relievers and physical therapy. *See Petties*, 836 F.3d at 729-31 (discussing what kind of evidence is adequate for a jury to draw a reasonable inference that a prison official acted with deliberate indifference). Under these circumstances, Dr. Talbot is not entitled to summary judgment.

Given these disputed facts, the motion for summary judgment is **denied** as to Dr. Talbot.

# IV.
# Aleycia McCullough

## A. Undisputed Facts

Aleycia McCullough was the Health Services Administrator ("HSA") at Pendleton from July 6, 2015, to March 31, 2017. As an HSA, one of her duties was to respond to the offender grievance process concerning medical issues. Ms. McCullough is not a medical provider and she did not see or treat inmates. Ms. McCullough cannot prescribe medications or order any doctors or nurses to prescribe medications or recommend outside consultations. She did not provide direct medical care for inmates confined at Pendleton. She had no role in establishing, reviewing, or approving Mr. Lemond's course of medical treatment. Clinical actions regarding health care services provided to inmates, including decisions regarding the appropriate course of treatment for an inmate's post-lumbar surgery recovery, are the sole responsibility of qualified mid- and upper-level health care providers, such as a nurse practitioner, physician assistant, or physician. At no time did Ms. McCullough purposefully deny, delay, or intentionally interfere with the delivery of medically necessary treatment to Mr. Lemond. Ms. McCullough's involvement in Mr. Lemond's medical care was limited to responding to grievances or assisting providers in addressing certain of Mr. Lemond's requests for health care.

For example, on October 7, 2015, Ms. McCullough responded to Mr. Lemond's informal grievance and noted that he saw a provider on October 6, 2015, to discuss his medications. McCullough also noted that providers prescribe and renew medications pursuant to their medical judgment. Because Mr. Lemond had been evaluated by a provider, McCullough believed that his

concerns regarding his pain medications had been addressed. Mr. Lemond's medical records also reflect that he began receiving Tramadol and continued receiving Neurontin on October 7, 2015.

On January 16, 2016, Mr. Lemond submitted an informal grievance, in which he requested physical therapy. Mr. Lemond stated he was supposed to receive physical therapy after his back surgery but had not received it.

On February 15, 2016, to address Mr. Lemond's grievance, McCullough emailed Dr. Talbot and alerted him to Mr. Lemond's request for physical therapy. She informed Dr. Talbot that he would need to resubmit his request for physical therapy if he felt that Mr. Lemond still needed it. Mr. Lemond was scheduled for an appointment with Dr. Talbot.

**B. Summary Judgment**

Ms. McCullough seeks summary judgment in her favor. Mr. Lemond argues that that Ms. McCullough investigated Mr. Lemond's grievances and found that he had not been given appropriate treatment and then failed to report her findings to her supervisors as required. Dkt. 35 at p. 5. Given the following undisputed facts, however, Ms. McCullough is entitled to judgment as a matter of law on all claims alleged against her. There is no evidence to support that she is responsible for any injury to Mr. Lemond or that she participated in any wrongdoing. Lawsuits under 42 U.S.C. § 1983 against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim. *Palmer v. Marion Cnty*, 327 F.3d 588, 594 (7th Cir. 2003).

Mr. Lemond's argument that part of Ms. McCullough's duties as HSA at Pendleton "is to insure that staff do their duties properly," is not supported by any evidence. Dkt. No. 35 at p. 1. In any event, even if she played a supervisory role, no supervisory liability is available in a § 1983

12

lawsuit. Individuals can only be liable under § 1983 if they had "personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (citations and quotations omitted).

In particular Mr. Lemond argues that "[b]y McCullough lacking to act on her investigation findings as with the findings of Dr. Talbot not ordering physical therapy for Plaintiff on or about November 2017, which Mrs. McCullough is calling a technical error . . . left Plaintiff to suffer unnecessarily and to lose mobility." Dkt. No. 35 at p. 1. But, Dr. Talbot's testimony is that at that time physical therapy was not medically indicated and that he did not ultimately make or complete the physical therapy request. This failure was Dr. Talbot's responsibility, not Ms. McCullough's.

The fact that Ms. McCullough responded to Mr. Lemond's grievances is insufficient to subject her to liability given her responsibilities at the prison and because Mr. Lemond was under the care of treating physicians. In addition, Mr. Lemond's grievance was not ignored. Instead Ms. McCullough's responses were appropriate.

> "If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor."

*Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

Because the evidence demonstrates that Ms. McCullough was not involved in the alleged denial of a narcotic pain reliever or physical therapy. There is no plausible basis to conclude that

Ms. McCullough was responsible for any injury suffered by Mr. Lemond. Accordingly, Mrs. McCullough is entitled to judgment as a matter of law on all claims alleged against her.

## V.
## Conclusion

Defendants' motion for summary judgment, Dkt. No. 27, is **granted in part and denied in part.** Summary judgment is granted in favor of Aleycia McCullough and denied as to Dr. Talbot.

The claims against Dr. Talbot shall be resolved through settlement or trial. The plaintiff's motion for assistance with recruiting counsel, Dkt. No. 33, has been reconsidered in light of this fact and is now **granted.** The Court will attempt to recruit counsel to assist the plaintiff in this action.

No partial final judgment shall issue at this time as to the claims resolved in this Entry.

**IT IS SO ORDERED.**

Date: 6/12/18

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

BILLY J. LEMOND
872105
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com